IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ESTHER NICOLE WALDREP, #254835, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:11-CV-622-WHA |
| ) | [WO] |
| ) | |
| FRANK ALBRIGHT, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on an amended complaint filed by Esther Nicole Waldrep ("Waldrep"), an indigent state inmate, challenging the release of personal and medical information to her mother. Waldrep names Frank Albright ("Albright"), the warden of Tutwiler Prison for Women at the time of the actions made the basis of the complaint, as the defendant in this cause of action. Waldrep seeks monetary damages from Albright.

The Defendant filed a special report, supplemental special report and relevant supporting evidentiary materials, including affidavits and certified medical records, addressing Waldrep's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as a motion for summary judgment. *Order of October 27, 2011 - Doc. No. 17*. Thus, this case is now pending on the

Defendant's motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the Plaintiff's response, the court concludes that the Defendant's motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The Defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the Defendant's properly supported motion for summary judgment, Waldrep is

3

required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting her claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of defendant); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment"); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be

granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form

5

indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in her favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Waldrep fails to demonstrate a genuine dispute of material fact in order to preclude summary judgment.

### III.  DISCUSSION

#### A.  Relevant Facts

On August 30, 2010, while confined at the Montgomery Women's Facility, Waldrep submitted a request form in which she requested a transfer "back to Tutwiler before I hurt someone or myself." *Exhibit 2 to the Defendant's Supplemental Special Report - Doc. No.*

*21-2* at 6. Based on the information provided by Waldrep in the request form, the warden of the Montgomery Women's Facility referred Waldrep to mental health personnel for evaluation on August 31, 2010. *Id*. at 10. During this evaluation, the mental health counselor noted that Waldrep had threatened to "hurt herself" and that this occurred because she "was upset that the Warden had not responded to her [previous] request to go back to Tutwiler." *Id*. The counselor observed that Waldrep's "mood/affect [was] agitated, confused" and noted that Waldrep was "uncertain of her feelings at this time." *Id*. Because of her unfamiliarity with Waldrep and the inmate's uncertain mental state at the time of this evaluation, the mental health counselor followed standard operating procedure and implemented a plan of "Crisis Intervention. [Inmate] to be sent back to Tutwiler and placed in the [Suicide Unit] on suicide watch for at least 24 hours. In which time, a crisis counselor and Psychiatrist can evaluate her for continued services." *Id*. The counselor issued a special needs profile advising correctional officials to place Waldrep "on suicide watch [at Tutwiler] for at least 24 hours . . . [with] a suicide smock, blanket and bag lunches." *Id*. at 7.

In light of the findings and recommendations made by the mental health counselor, correctional officials immediately transferred Waldrep to Tutwiler for placement on suicide watch. The initial nursing assessment completed upon Waldrep's arrival at Tutwiler identified a "History of Agression/Acting Out Behavior" by the inmate. *Id*. at 8. At this time, Waldrep admitted to the attending nurse that she had recently threatened to "'hurt someone or myself'" but "denied suicidal thoughts at present." *Id.* at 9. The attending nurse

placed Waldrep on "sucide watch" and she was confined in the suicide unit at Tutwiler. *Id*. The following morning, Waldrep advised mental health personnel that she had wanted to "hurt somebody" but was not suicidal at that time. *Id*. That afternoon, mental health personnel released Waldrep from suicide watch. *Id*.

After her transfer to Tutwiler on August 31, 2010, Waldrep's mother, Era Harris, phoned correctional officials, including Albright, several times seeking information regarding the medical status of her daughter.[2] *Exhibit B to the Plaintiff's Response in Opposition - Doc. No. 19-2* at 1. Correctional officials advised Mrs. Harris that they could not release any information to her regarding her daughter's medical condition absent authorization to do so from the inmate. *Id*. In response to phone messages from Era Harris, Albright phoned Mrs. Harris at which time she voiced concern about her daughter's health and well being as she had not heard from her daughter since the transfer to Tutwiler. "Warden Albright told me that he could not release Esther's information to me. I asked him why and he said that Esther would have to o.k. it first.... Warden Albright told me that he would call me back." *Id*. at 1-2.

After his conversation with Mrs. Harris, Albright located Waldrep and escorted her to his office. Albright discussed with Waldrep his previous phone conversation with her

---

[2]Waldrep's mother signed her affidavit as Era D. Waldrep. *Exhibit B to the Plaintiff's Response in Opposition - Doc. No. 19-2* at 3. The Plaintiff identifies her mother as both Era D. Waldrep and Era Harris. To avoid any confusion between the Plaintiff and her mother in this Recommendation, the court will refer to the Plaintiff's mother as Era Harris or Mrs. Harris.

mother. Albright also obtained information indicating that Waldrep had advised medical personnel at the Montgomery Women's Facility that she was "suicidal" which precipitated her immediate transfer to Tutwiler for placement on suicide watch "because Montgomery Women's Facility is not equipped to handle suicidal inmates." *Exhibit A to the Defendant's Special Report - Doc. No. 16-1* at 1. Waldrep advised Albright "that she actually was not suicidal" and they then discussed Waldrep's relationship with another inmate,[3] a relationship of which Albright was aware. *Id*. at 1; *Exhibit A to the Plaintiff's Response in Opposition - Doc. No. 19-1* at 1.

When they reached his office, Albirght phoned Era Harris and placed the call on speaker phone. After calling Mrs. Harris and prior to releasing any information to her, medical personnel advised Albright that Mrs. Harris did not appear on the form allowing release of Waldrep's medical information to an outside individual. At this time, Waldrep executed a form permitting correctional officials to provide confidential information in her medical files to her mother. *Exhibit B to the Defendant's Special Report - Doc. No. 16-2* at 2. Albright then advised Mrs. Harris that her daughter had been transferred to Tutwiler due to a statement she made while incarcerated at the Montgomery Women's Facility, a statement mental health personnel characterized as suicidal in nature thereby warranting a transfer to Tutwiler for placement on suicide watch. Waldrep told her mother that she had

---

[3] This inmate is HIV-positive. Although she has previously been named by both parties in documents filed with the court, the undersigned deems it appropriate to simply refer to her as inmate Jane Doe for purposes of this Recommendation.

not actually threatened to kill herself and denied being suicidal. At some point during the phone conversation, inmate Jane Doe's name was mentioned and the nature of the inmates' relationship was discussed. Albright inquired whether Mrs. Harris had knowledge of inmate Doe's medical condition to which Waldrep responded that she did not. Based on the nature of her relationship with inmate Doe, Albright encouraged Waldrep to discuss inmate Doe's medical status with her mother. Waldrep then advised her mother that inmate Jane Doe was HIV-positive. Mrs. Harris became very emotional and questioned her daughter regarding why she had engaged in an intimate relationship with inmate Doe. Subsequently, Albright informed Mrs. Harris that her daughter would be tested for HIV.

### B. Absolute Immunity

To the extent Waldrep sues Albright in his official capacity, he is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Albright is a state actor entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C. Individual Capacity Claims

1. <u>The HIPPA Claim</u>. Waldrep complains that Albright violated the Healthcare Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C § 1320d, *et seq.*, when releasing information to her mother regarding her mental status and health condition. *Amended Complaint - Doc. No. 1* at 3. This claim provides no basis for relief as it is well settled that HIPAA does not create a private right of action. *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809 (11th Cir. 2011) (affirming district court's denial of plaintiff's claim that release of medical records to unauthorized third party violated his right of privacy under HIPAA because "there is no private right of action for a violation of HIPAA's confidentiality provisions."); *Crawford v. City of Tampa*, 397 F. App'x 621, 624 (11th Cir. 2010) (court agreed with the majority of federal courts "that no private right of action exists under the Healthcare Insurance Portability and Accountability Act."); *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates [either] a private cause of action . . . or rights that are enforceable through § 1983."); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("We agree with the district court that [plaintiff's privacy claim presented as a violation of HIPAA] fails because HIPAA does not create a private right of

11

action."); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action [to an individual] for alleged disclosures of confidential medical information."); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) ("HIPAA does not create a private right."); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1080 (9th Cir. 2007) ("HIPAA provides for no private right of action."); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006) ("[T]here is no private cause of action under HIPAA."); *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 668 (8th Cir. 2007) (no private right of action under HIPAA); *Agee v. United States*, 72 Fed. Cl. 284 (Fed. Ct. Claims. 2006) (holding that HIPAA does not provide a private cause of action in which individuals may seek relief).

    2. <u>Privacy Right Under the Fourteenth Amendment</u>. While there is no "right of privacy" found in any specific guarantee of the Constitution, the Supreme Court has recognized that the rights the Constitution does provide may create "zones of privacy." *Paul v. Davis*, 424 U.S. 693, 712-13 (1976). Cases involving right of privacy claims generally relate to substantive aspects of the Fourteenth Amendment -- matters involving the right to marry, the right to procreate, the right to use contraception, the right to engage in familial relationships, especially with minor children, and the right to an education. *Id.* at 713. These rights, as they relate to inmates, are limited in scope due to the very fact of incarceration. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (some rights are simply inconsistent with status as a prisoner or with legitimate penological objectives of prison system); *Powell v. Schriver*,

175 F.3d 107, 112 (2d Cir. 1999) ("[I]nmates retain those constitutional rights that are not inconsistent with their status as prisoners or with the legitimate penological objections of the corrections system.").

Waldrep asserts that Albright violated her right to confidentiality when he disclosed her relationship with inmate Jane Doe to her mother. *Amended Complaint - Doc. No. 6* at 2-3. Waldrep also alleges that Albright improperly provided information to her mother regarding the state of her mental health when she was transferred to Tutwiler and the manner in which she would be tested for potential exposure to HIV after admitting the nature of her relationship with inmate Doe. *Id*. at 3. To the extent Waldrep alleges a violation of the right to privacy through protections afforded under the Fourteenth Amendment, she is entitled to no relief.

Initially, it is clear that the release of information to Waldrep's mother regarding a relationship in which she had engaged with another inmate does not implicate those rights protected by the Fourteenth Amendment. With respect to Waldrep's claim challenging the release of information from her medical file to her mother, Waldrep provided written authorization to correctional officials allowing them to furnish this information to her mother prior to Albright providing the information to this individual. The release of information pursuant to an inmate's prior consent to such action is not violative of any right to privacy recognized by the Fourteenth Amendment.[4]

---

[4]The Privacy Act, 5 U.S.C. § 552a(g)(1)(D), likewise provides no basis for relief to Waldrep as the consensual release of information is not prohibited by the Act.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The Defendant's motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the Defendant.

3.  This case be dismissed with prejudice.

4.  No costs be taxed herein.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **September 8, 2014**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions

of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 25th day of August, 2014.

>/s/ Wallace Capel, Jr.
>WALLACE CAPEL, JR.
>UNITED STATES MAGISTRATE JUDGE